2023 IL App (1st) 231033-U

SECOND DIVISION
November 21, 2023

No. 1-23-1033

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).
_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| IN THE INTEREST OF C.P., A MINOR, | ) | Appeal from the |
| (THE PEOPLE OF THE STATE OF ILLINOIS | ) | Circuit Court of |
| | ) | Cook County. |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 22 JD 00961 |
| | ) | |
| C.P. | ) | Honorable |
| | ) | Kathryn Vahey, |
| Minor Respondent-Appellant.) | ) | Judge Presiding. |

_____

JUSTICE ELLIS delivered the judgment of the court.
Justices McBride and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Subsections of AUUW and UPF statutes, imposing age-based restrictions on firearms possession by those under 21 and 18 years of age, respectively, do not violate Second Amendment, either facially or as-applied to 16-year-old minor-respondent.

¶ 2    Sixteen-year-old minor-respondent, C.P., was adjudicated delinquent on one count each of aggravated unlawful use of a weapon (AUUW) and unlawful possession of a firearm (UPF). He claims that the relevant statutory provisions violate the second amendment, both facially and as applied to him. 720 ILCS 5/24-1.6(a)(1), (a)(3)(I); 5/24-3.1(a)(1) (West 2022). Our supreme court has rejected these challenges and upheld the provisions at issue. *People v. Mosley*, 2015 IL 115872, ¶¶ 33-38; *In re Jordan G.*, 2015 IL 116834, ¶¶ 21-25; *People v. Aguilar*, 2013 IL

112116, ¶¶ 24-28.

¶ 3    True, these precedents pre-date *New York State Rifle & Pistol Assn., Inc. v. Bruen,* ___ U.S. ___, 142 S. Ct. 2111 (2022). All the same, they were decided on precisely the grounds of "text, as informed by history," that *Bruen* now requires. *Id.* at 2127. This point bears emphasis, so we will linger on it for a moment, even though the citations to *Mosley*, *Jordan G.*, and *Aguilar* suffice, on their own, to dispose of this case.

¶ 4    The AUUW statute prohibits anyone under the age of 21 from possessing a handgun outside the home, unless the person is engaged in certain specified lawful activities that are not relevant here. 720 ILCS 5/24-1.6(a)(1), (a)(3)(I) (West 2022). The UPF statute prohibits anyone under the age of 18 from possessing a concealable firearm. 720 ILCS 5/24-3.1(a)(1) (West 2022). Respondent was adjudicated delinquent under these provisions after a short bench trial, at which the juvenile court found, in sum, that he tossed a loaded handgun into the street while fleeing on foot from the police. (For whatever reason, the court did not formally merge the two counts, but it did render a single disposition of 1-year on juvenile probation.)

¶ 5    In the wake of *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the state and federal courts "coalesced" around a two-part test for evaluating the constitutionality of a firearm regulation under the second amendment. See *Bruen*, 142 S. Ct. at 2125. Our supreme court adopted its version of this test in *Wilson v. County of Cook*, 2012 IL 112026.

¶ 6    In the first step of the *Wilson* analysis, the court conducts a "textual and historical inquiry" to determine whether the challenged law regulates conduct that was understood to fall within the scope of the second amendment's protections at the time of ratification. *Id.* ¶ 41. If the regulated conduct falls outside the scope of the amendment, it is categorically unprotected. *Id.*

¶ 7     If the historical evidence suggests that the regulated conduct is *not* categorically unprotected, or if that evidence is inconclusive, the analysis proceeds to a second step, in which the court evaluates " 'the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights.' " *Id.* ¶ 42 (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 702-03 (7th Cir. 2011)). Whatever level of scrutiny is applied—strict, intermediate, or rational basis review—this inquiry is known, in general, as "means-end scrutiny." *Bruen*, 142 S. Ct. at 2127.

¶ 8     The prevailing two-step inquiry was "one step too many" for *Bruen*, which held that means-end scrutiny does not apply to the second amendment. *Id.* "Instead, the government must affirmatively prove that its firearm regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* The inquiry thus begins with the threshold question whether the "Second Amendment's plain text covers an individual's conduct." *Id.* at 2129-30. If so, the amendment "presumptively protects that conduct," and "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130. Full stop.

¶ 9     This is just an elaboration of what the lower courts had been doing in "[s]tep one of the predominant framework." *Id.* at 2127. After *Bruen*, this textual and historical inquiry is always dispositive. But even before *Bruen*, our supreme court found it dispositive, anyway, whenever the challenged law regulates the possession of firearms by people under the age of 21. The laws challenged here have *never* been justified by application of the means-end scrutiny that *Bruen* eliminated.

¶ 10    Consider subsection (a)(3)(I) of the AUUW statute. Like 16-year-old respondent here, the 19-year-old defendant in *Mosley*, 2015 IL 115872, ¶¶ 5-6, was convicted under this subsection

after tossing a loaded handgun on a public way while fleeing on foot from the police. He argued that the statute violated the second amendment, both facially and as applied to a "young adult," namely an 18-to-20-year-old. Such young adults, he argued, are among "the People" to whom the second amendment applies by its plain terms. The supreme court rejected this argument on historical grounds.

¶ 11    Relying on its decision in *Aguilar*, 2013 IL 112116, various cases cited in *Aguilar*, and thus, by extension, the historical sources cited in those cases, the supreme court held that "the restriction on persons under the age of 21 who are not engaged in lawful hunting activities is both historically rooted and not a core conduct subject to second amendment protection." *Mosley*, 2015 IL 115872, ¶ 37.

¶ 12    The supreme court found it unnecessary in *Mosley* to rehash the well-worn historical evidence of a national tradition of firearm regulations applying to minors under 21 years of age. *Id.* ¶ 36. And we will not rehash it either, except to add, by way of context, that the cutoff age of 21 has always reflected the universally recognized age of majority from the time of the founding until well into the twentieth century. See, *e.g.*, William Blackstone, *Commentaries on the Laws of England,* Vol. 1 at 463 (1st ed. 1765) ("So that full age in male or female, is twenty one years * * * who till that time is an infant, and so styled in law.").

¶ 13    The key point is that *Mosley* drew the second-amendment line at age 21, and it did so based on the historical meaning of a textual term ("the People") and the national tradition of age-based firearm regulation. The supreme court thus held that subsection (a)(3)(I) "passes the first part of the *Wilson* analysis" and thus that "a second half analysis under *Wilson*"—which is to say, means-end scrutiny—"is unnecessary." *Mosley*, 2015 IL 115872, ¶ 37.

¶ 14    The only factual difference between this case and *Mosley* is that respondent here is 16,

and thus not even what we would nowadays call a "young adult" (a category unknown to the founding generation or, for that matter, the drafters of the fourteenth amendment, which applied the second amendment to the states). But that fact hardly helps his cause. And lest there be any mistake on this point, on the same day that the *Mosley* decision was issued, our supreme court also issued *Jordan G.*, 2015 IL 116834, ¶¶ 21-25, in which it rejected a 16-year-old minor's constitutional challenge to the same subsection of the AUUW statute. As in *Mosley*, this age-based firearm regulation was upheld as "historically rooted." *Id.* ¶ 25.

¶ 15    Respondent here was also convicted under subsection (a)(1) of the UPF statute. 720 ILCS 5/24-3.1(a)(1). So was the 17-year-old defendant in *Aguilar*, 2013 IL 112116, ¶ 25. The supreme court held that "the possession of handguns by minors is conduct that falls outside the scope of the second amendment's protection." *Id.* ¶ 27. And given that *Aguilar* was at least the proximate source of the historical conclusions in *Mosley* and *Jordan G.*, the basis for this holding should be evident enough by now. We would just note that, in upholding this age-based firearm regulation as historically justified, the supreme court concluded that colonial-era statutes allowing minors to serve in certain militias did not entail a second-amendment right to bear arms. *Id.* ¶ 24.

¶ 16    To reiterate: our supreme court has never relied on means-end scrutiny in upholding the challenged subsections of the AUUW and UPF statutes. Rather, it has held these sections to be firmly justified by text and historical tradition. So the "doctrinal reset" (in appellate counsel's phrase) brought about by *Bruen*'s elimination of means-end scrutiny has no impact on these particular statutory provisions.

¶ 17    To be sure, respondent takes issue with our supreme court's view of the pertinent history. To this end, he argues that "the People" means "all Americans," regardless of age; that minors, as young as 16, sometimes served in colonial militias; that there is no evidence of a tradition of

age-based firearm restrictions in this country; and other such points. Our supreme court has heard and rejected these arguments, and its conclusions remain binding on us, even as litigation on this topic marches on. *In re A.P.*, 2014 IL App (1st) 140327, ¶ 25 ("as an appellate court, we are bound to honor our supreme court's conclusion on an issue unless and until that conclusion is revisited by our supreme court or overruled by the United States Supreme Court" (quotation marks and citations omitted)). Further comment from us is thus neither necessary nor appropriate.

¶ 18    Under the binding precedents of *Mosley*, *Jordan G.*, and *Aguilar*, respondent's facial and as-applied challenges to subsection (a)(3)(I) of the AUUW statute and subsection (a)(1) of the UPF statute all fail.

¶ 19    For these reasons, the judgment of the circuit court is affirmed.

¶ 20    Affirmed.